No. 2--06--0296                    filed: 1/12/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SCOTT KIBORT, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--CH--784 |
| | ) | |
| DEAN WESTROM, in his Official Capacity as | ) | |
| Chairman of The Du Page County Election | ) | |
| Commission, and THE DU PAGE | ) | |
| COUNTY ELECTION COMMISSION, | ) | Honorable |
| | ) | Kenneth L. Popejoy, |
| Defendants-Appellees. | ) | Judge, Presiding. |
| | ) | |

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, Scott Kibort, appeals from the trial court's order granting summary judgment in favor of defendants, the Du Page County Election Commission and its chairman, Dean Westrom (collectively referred to as the Commission), on plaintiff's complaint for declaratory and injunctive relief. Plaintiff also appeals from the trial court's order denying his motion for summary judgment. In his complaint, plaintiff alleged that the Commission had violated the Illinois Freedom of Information Act (the Information Act) (5 ILCS 140/1 et seq. (West 2004)) by denying his request to examine the ballots, ballot box tapes, and poll signature cards from the April 5, 2005, Glendale Heights consolidated election. The trial court ruled that the Commission had not violated the Information Act, because disclosure of the requested records was prohibited by sections 17--20 and

17--22 of the Election Code (10 ILCS 5/17--20, 17--22 (West 2004)). We hold that the trial court properly construed the applicable provisions of the Information Act and the Election Code and affirm its judgment.

The record reflects that, on May 6, 2005, plaintiff submitted to the Commission a written request to examine various records from the April 5, 2005, Glendale Heights consolidated election, including ballots, ballot box tapes, and poll signature cards. On May 12, 2005, Robert Saar, executive director of the Commission, sent plaintiff a letter denying access to all requested records.

On May 19, 2005, plaintiff submitted a written letter of appeal to the Commission. On June 1, 2005, Westrom sent plaintiff a letter denying his appeal. In this letter, Westrom noted that section 7(1)(a) of the Information Act (5 ILCS 140/7(1)(a) (West 2004)) exempted from disclosure any records prohibited from disclosure by federal or state law. Westrom explained that, pursuant to section 17--20 of the Election Code, the ballots requested by plaintiff had been sealed and could be unsealed for examination only upon a statutorily authorized discovery recount proceeding. Additionally, Westrom stated that, pursuant to section 17--22 of the Election Code, the ballot box tapes and poll signature cards requested by plaintiff had been sealed and could be unsealed only for use as evidence in judicial proceedings.

On June 1, 2005, plaintiff filed a complaint for declaratory and injunctive relief against the Commission. As amended, the complaint contained four counts. Plaintiff subsequently dismissed counts II and III of his complaint, pursuant to a partial settlement agreement with the Commission. Count I of plaintiff's complaint alleged that the Commission had violated section 3 of the Information Act (5 ILCS 140/3 (West 2004)) by denying his request to inspect the ballots, ballot box tapes, and poll signature cards from the April 5, 2005, Glendale Heights consolidated election.

Count IV of plaintiff's complaint alleged that the Commission's denial of his request violated section 9(b) of the Information Act (5 ILCS 140/9(b) (West 2004)) because it "failed to sufficiently cite sections of the Election Code that specifically prohibit from disclosure the ballots, ballot box tapes, and poll signature cards." Plaintiff requested the trial court to enter an order declaring that the Commission's denial of his request to inspect the ballots, ballot box tapes, and poll signature cards was a violation of the Information Act. Plaintiff further requested the trial court to order the Commission to immediately release the requested records for his inspection.

The parties subsequently filed cross-motions for summary judgment. In his motion for summary judgment, plaintiff argued that the undisputed evidence established that the requested ballots, ballot box tapes, and poll signature cards were public records prepared, used, received, or possessed by the Commission, a public body. Accordingly, plaintiff argued that disclosure of the records was required by section 3 of the Information Act (5 ILCS 140/3 (West 2004)). Plaintiff also argued that, in denying his inspection request, the Commission had failed to cite a section of the Election Code that specifically prohibited disclosure of the requested records. In its motion for summary judgment, the Commission did not dispute that the records requested by plaintiff were "public records" and that the Commission was a "public body" as defined under the provisions of the Information Act. Instead, the Commission argued that the requested records were exempt from disclosure under section 7(1)(a) of the Information Act because the records had been sealed in accordance with sections 17--20 and 17--22 of the Election Code. The Commission also argued that Westrom's letter to plaintiff denying his appeal sufficiently cited the statutory provisions of the Election Code that prohibited disclosure.

On February 23, 2006, following a hearing, the trial court granted the Commission's motion for summary judgment and denied plaintiff's motion for summary judgment. The trial court found that, although sections 17--20 and 17--22 of the Election Code did not explicitly prohibit the inspection of the ballots, ballot box tapes, and poll signature cards, they nonetheless imposed upon the Commission a requirement to keep these records under seal pending any election contest authorized by the Election Code. The trial court further found that the Commission would be unable to comply with its statutory obligations under the Election Code if it permitted plaintiff access to the sealed ballots, ballot box tapes, and poll signature cards. Therefore, the trial court concluded that allowing plaintiff access to these records would violate the provisions of the Election Code and that the records were exempt from disclosure under section 7(1)(a) of the Information Act. Additionally, the trial court found that the Commission had sufficiently referenced sections 17--20 and 17--22 of the Election Code as the basis of its denial of plaintiff's request for the records. Plaintiff subsequently filed a timely notice of appeal.

On appeal, plaintiff contends that the trial court erred in granting the Commission's motion for summary judgment and denying his motion for summary judgment. Plaintiff argues that the trial court erred in concluding that sections 17--20 and 17--22 of the Election Code prohibited the Commission from disclosing the records he requested. Plaintiff argues that the sole purpose of sections 17--20 and 17--22 was to establish a procedure for the preservation of ballots, ballot box tapes, and poll signature cards. Plaintiff asserts that, because sections 17--20 and 17--22 contain no express provision prohibiting disclosure of such records pursuant to the Information Act, the records were not exempt from disclosure under section 7(1)(a) of the Information Act. Plaintiff argues that the requested records satisfy the requirements for disclosure under the Information Act and that the

disclosure of the records is essential to permit citizens to "access and monitor the operations of government to ensure free [and] fair elections."  Plaintiff also argues that the trial court erred in determining that the Commission's denial of his request sufficiently specified the statutory basis supporting the claimed exemption.

Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2004).  Summary judgment is proper where the parties agree on the relevant facts and the record presents only questions of law. J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd., 194 Ill. App. 3d 744, 748 (1990).  This court reviews de novo a trial court's ruling on a motion for summary judgment.  Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004).  On appeal, the reviewing court is not bound by the trial court's reasoning and it may sustain the trial court's decision on any basis appearing in the record. Makowski v. City of Naperville, 249 Ill. App. 3d 110, 115 (1993).

A resolution of the instant appeal requires a construction of the provisions of the Information Act and the Election Code.  Our objective when construing the meaning of a statute is to ascertain and give effect to the legislature's intent.  People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 279 (2003).  The best indicator of the legislature's objectives in enacting a particular law is the plain language of the statute.  Southern Illinoisan v. Illinois Department of Public Health, 218 Ill. 2d 390, 415 (2006).

Section 1 of the Information Act provides that it is "the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees."

5 ILCS 140/1 (West 2004). In accordance with this policy statement, section 3 of the Information Act provides that "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of this Act." 5 ILCS 140/3(a) (West 2004). In view of these statutory provisions, our supreme court has held that the purpose of the Information Act is to provide the public with easy access to government information and that the Information Act should be accorded " 'liberal construction to achieve this goal.' " Southern Illinoisan, 218 Ill. 2d at 416, quoting Bowie v. Evanston Community Consolidated School District No. 65, 128 Ill. 2d 373, 378 (1989).

In the instant case, the parties do not dispute that, for purposes of the Information Act, the Commission is a "public body" and the records requested by plaintiff are "public records." Instead, the parties disagree on whether the records that plaintiff requested are exempt from disclosure under Section 7(1)(a) of the Information Act. That section provides:

"(1) The following shall be exempt from inspection and copying:

(a) Information specifically prohibited from disclosure by federal or State law or rules and regulations adopted under federal or State law." 5 ILCS 140/7(1)(a) (West 2004).

In view of the Information Act's purpose to make governmental records open to public scrutiny, our supreme court has held that the exemptions to disclosure set forth in the Information Act are to be narrowly construed so as not to defeat the Information Act's intended purpose. Southern Illinoisan, 218 Ill. 2d at 416. When a public body seeks to invoke one of the exemptions enumerated in section 7 as grounds for refusing disclosure, the "notice of denial shall specify the exemption claimed to authorize the denial." 5 ILCS 140/9(b) (West 2004).

In its June 1, 2005, letter denying plaintiff's request for access to the election documents, the Commission specifically referenced the exemption contained in section 7(1)(a) of the Information Act and indicated that the disclosure of the requested records was prohibited by the Election Code. As to plaintiff's request for access to the ballots, the Commission indicated that disclosure was prohibited by section 17--20 of the Election Code. That section provides that, after the election judges at a precinct polling place have tallied the ballots and reported the results by telephone, the judges shall:

"[F]old or roll all of the ballots which have been counted by them, *** securely bind them, lengthwise and in width, with a soft cord *** and wrap the same with heavy wrapping paper on which the judges of election shall write their signature and seal the package with filament over the signatures and around the package lengthwise and crosswise, *** and enclose the ballots so wrapped *** in a secure canvass covering ***. The precinct judges of election shall elect 2 judges *** who shall immediately return the ballots, in such sealed canvass covering, to the election authority ***. *** Upon receiving the ballots so returned, the election authority shall carefully preserve the ballots for 2 months, subject to their examination in a discovery recount proceeding in accordance with law. *** At the expiration of that time such election authority shall remove the same from original package and shall destroy the same, together with all unused ballots returned from the polling places. If any contest of election is pending at such time in which such ballots may be required as evidence, and such election authority has notice thereof the same shall not be destroyed until after such contest is finally determined." 10 ILCS 5/17--20 (West 2004).

As to plaintiff's request for ballot box tapes and poll signature cards, the Commission indicated that disclosure was prohibited by section 17--22 of the Election Code. That section provides, in pertinent part, as follows:

"The judges of election shall make the tally sheet and certificate of results in triplicate. *** One list of voters, or other proper return with such certificate written thereon, and accompanying tally sheet footed up so as to show the correct number of votes cast for each person voted for, shall be carefully enveloped and sealed up by the judges of election, 2 of whom *** shall immediately deliver same to the county clerk, or his deputy, at the office of the county clerk, or to an officially designated receiving station established by the county clerk where a duly authorized representative of the county clerk shall receive said envelopes for immediate transmission to the office of county clerk, who shall safely keep them. *** The poll book and tally list filed with the county clerk shall be kept one year, and certified copies thereof shall be evidence in all courts, proceedings and election contests." 10 ILCS 5/17--22 (West 2004).

The parties agree that the "tally list" referred to in section 17--22 is what plaintiff sought to inspect when he requested production of the "ballot box tapes." The parties also agree that the "poll book" referred to in section 17--22 is what plaintiff sought to inspect when he requested production of the "poll signature cards."

On appeal, plaintiff does not dispute that sections 17--20 and 17--22 of the Election Code establish procedures for the preservation of ballots, ballot box tapes, and poll signature cards following an election. As noted above, plaintiff argues that, because these statutory provisions do not contain any language specifically prohibiting disclosure of these records to the public, the trial

court erred in determining that these records were exempt from disclosure under section 7(1)(a) of the Information Act.

Our reading of the plain language of sections 17--20 and 17--22 of the Election Code leads us to conclude that these provisions unambiguously prohibited the Commission from disclosing to plaintiff the ballots, ballot box tapes, and poll signature cards from the April 5, 2005, Glendale Heights consolidated election. Sections 17--20 and 17--22 required the precinct election judges of the April 5, 2005, Glendale Heights consolidated election to seal in envelopes or canvass coverings the ballots, ballot box tapes, and poll signature cards from the election. The statutes required the election judges to seal these materials at the polling place after all of the ballots had been tallied and the results reported by telephone. The election judges were then required to personally deliver these sealed materials to the designated election authority. As the election authority, the Commission was required by section 17--20 to "carefully preserve" the sealed ballots for a period of two months, subject only to their examination in a discovery recount proceeding in accordance with the Election Code. See 10 ILCS 5/17--20 (West 2004). Section 17--22 required the Commission to "safely keep" the sealed ballot box tapes and poll signature cards for a period of one year, subject only to the use of certified copies of these records as "evidence in all courts, proceedings and election contests." 10 ILCS 5/17--22 (West 2004). These statutory provisions plainly required the Commission to safely keep the ballots, ballot box tapes, and poll signature cards as originally sealed by the election judges, for the statutorily designated time period, unless called upon to deliver the documents, or certified copies thereof, as evidence in a discovery recount, election contest, or other judicial proceeding. As plaintiff's request to inspect the records under the Information Act was not a basis

on which disclosure was authorized by sections 17--20 and 17--22, the Commission correctly determined that it was prohibited from unsealing these records to allow plaintiff to inspect them.

A review of the case authority construing sections 17--20 and 17--22 and their statutory predecessors reveals that the purpose of these statutory provisions is to preserve in an unspoiled condition the ballots, ballot box tapes, and poll signature cards from an election, for use as proof of the election results in court proceedings initiated under the Election Code or as evidence in another judicial proceeding. As early as 1896, our supreme court held that the ballots were the best evidence in determining the result of an election, when it "appears that they have been preserved in the manner and by the officers prescribed in the statute, and have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with." Catron v. Craw, 164 Ill. 20, 23 (1896). When the ballots have been properly preserved and have not been submitted to "improper exposure," they are "evidence of a higher and more controlling character than the count of the judges and clerks of the election." Catron, 164 Ill. at 23; see also Murphy v. Battle, 155 Ill. 182, 187-88 (1895). Illinois reviewing courts continue to hold that ballots are the best evidence of election results if they "are in the same condition as when counted" and have been preserved by the appropriate officers in the manner prescribed by law. Porter v. Greening, 347 Ill. 434, 438 (1932); see Bethard v. Mink, 10 Ill. App. 3d 525, 527 (1973); MacWherter v. Turner, 52 Ill. App. 2d 270, 273 (1964). Where election ballots have been exposed to the reach of unauthorized persons, the evidentiary value of the ballots diminishes and the ballots can no longer be regarded as the best evidence of the election result. See Armburst v. Starkey, 3 Ill. 2d 131, 133 (1954); Bullman v. Cooper, 362 Ill. 469, 473 (1936).

Illinois reviewing courts have also accorded significant evidentiary value to the tallies and returns of the election judges, holding that such returns are prima facie evidence of the results of the election. Armburst, 3 Ill. 2d at 133; Rogers v. Meade, 363 Ill. 630, 637 (1936). However, for such returns to be considered, the evidence must "cast no discredit upon the returns." Talbott v. Thompson, 350 Ill. 86, 92 (1932); see also Armburst, 3 Ill. 2d at 133 (noting that the returns of the election judges are prima facie evidence of the election results, provided the returns "are not discredited"). Ballots and other election records may also be properly admitted in other judicial proceedings in addition to those specified in the Election Code. See People ex rel. Hoyne v. Lueders, 269 Ill. 205, 211-12 (1915) (holding that the election authority was required to produce ballots requested by a grand jury investigating potential criminal wrongdoing where such ballots were the best evidence of alleged violation of election laws).

In essence, the procedures contained in sections 17--20 and 17--22 of the Election Code establish a mechanism akin to "a chain of custody" in a criminal case. Compliance with the statutory guidelines minimizes the potential for tampering by "unauthorized persons" (see Catron, 164 Ill. at 23) and keeps the ballots and election records in "the same condition when produced in open court as they were when counted by [the election] judges" (Haley v. Reidelberger, 340 Ill. 154, 158 (1930)). Here, accommodation of plaintiff's inspection request would have required the Commission to unseal the ballots and records prepared by the election judges following the tallying and reporting of the votes. Unsealing the records would necessarily compromise their integrity so as to render them suspect for purposes of a proceeding to challenge the election. See Bethard, 10 Ill. App. 3d at 527-28. In light of the plain language of sections 17--20 and 17--22 and the case

authority discussed above, we agree with the trial court that these statutory provisions unambiguously prohibited the Commission from disclosing the requested records to plaintiff.

Plaintiff asserts that the records requested are not exempt from disclosure under section 7(1)(a) because sections 17--20 and 17--22 of the Election Code do not contain language "specifically prohibiting" the public disclosure of ballots, ballot box tapes, and poll signature cards or language indicating that these records are exempt from disclosure under the Information Act. Plaintiff posits that, if the General Assembly had intended to preclude the disclosure of such records under the Information Act, then it would have specifically so indicated in sections 17--20 and 17--22 of the Election Code, as it has done in the Open Meetings Act and the State Officials and Employees Ethics Act. See 5 ILCS 120/2.06(e) (West 2004) (providing that "the verbatim record of a meeting [of a public body] closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce the [Open Meetings Act]"); 5 ILCS 430/20--95(a) (West 2004) (providing that "[d]ocuments generated by an ethics officer under [the State Officials and Employees Ethics Act] *** are exempt from the provisions of the Freedom of Information Act"). During oral argument, the Commission responded that any ambiguity created by the omission of statutory language "specifically prohibiting" disclosure under the Information Act is resolved when the statutory language is considered in its entirety. The Commission argued that the language of sections 17--20 and 17--22 plainly shows that such disclosure of these records was not intended.

We reject plaintiff's assertion that the exemption contained in section 7(1)(a) of the Information Act applies only in instances where the relevant statute specifically provides that it is exempt from the provisions of the Information Act or otherwise contains an explicit prohibition against public disclosure. While the General Assembly may choose to explicitly reference the

applicability of the Information Act to a statutory provision, the language of section 7(1)(a) certainly imposes no such requirement. Instead, the plain language of section 7(1)(a) exempts from disclosure "[i]nformation specifically prohibited from disclosure by federal or State law." 5 ILCS 140/7(1)(a) (West 2004). We interpret such language to mean that records are exempt from disclosure under the Information Act in instances where the plain language contained in a State or federal statute reveals that public access to the records was not intended. See Roulette v. Department of Central Management Services, 141 Ill. App. 3d 394, 400 (1986) (noting that provision of former Personnel Records Act (Ill. Rev. Stat., 1984 Supp., ch. 116 , par. 207(a)) that prohibited state employees from viewing any testing document or other material used by state agency for management planning precluded the state agency from accommodating request under the Information Act for the disclosure of the results of a psychological examination administered to a job applicant).

While we do not dispute that the exception contained in section 7(1)(a) of the Information Act does not apply in instances where a State or federal statute is ambiguous or silent in regard to the disclosure of public records, we are not presented with such a situation in the instant case. Here, although sections 17--20 and 17--22 lack any language specifically referencing the applicability of the Information Act or explicitly forbidding public access to ballots, ballot box tapes, and poll signature cards, the language of these statutory provisions nonetheless unambiguously prohibits disclosure of such records. Sections 17--20 and 17--22 plainly require the Commission to maintain and keep these records in the sealed condition in which they were received from the election judges. As we have already discussed, the Commission could not comply with these statutory directives if it allowed the public to have access to these records pursuant to the provisions of the Information Act. To interpret sections 17--20 and 17--22 in a manner that would permit the public to have access

to these election documents would be to contravene the legislature's purpose in enacting these provisions. See Burger v. Lutheran General Hospital, 198 Ill. 2d 21, 40 (2001) (noting that statute should not be construed in a manner that would lead to absurd results). Notably, plaintiff has not cited a single case holding that disclosure of the sealed ballots, ballot box tapes, and poll signature cards from an election is required under the provisions of the Information Act. Lacking contrary authority, we conclude that the language of sections 17--20 and 17--22 unambiguously prohibits disclosure of the records requested by plaintiff. See Roulette, 141 Ill. App. 3d at 400.

We also reject plaintiff's argument that the public policy underlying the Information Act mandates the disclosure of ballots, ballot box tapes, and poll signature cards to enable the public to monitor "the public officials charged with maintaining elections." While we do not dispute that the purpose of the Information Act is to permit citizens to access information for the purpose of monitoring the affairs of government (5 ILCS 140/1 (West 2004)), we also note that sections 17--20 and 17--22 of the Election Code are predicated on an equally compelling public policy that the integrity of ballots and other election records should be protected against tampering. As noted by the court in Stradford v. Reinecke, 6 Ill. App. 2d 537, 544 (1955), the purpose of such legislation was "to safeguard to the people of this State their rights of suffrage, to prevent illegal voting and to insure their elective will. The ballots were to be preserved for a specified period following an election and their integrity carefully and dutifully preserved to be used as evidence to effect that purpose." The disclosure provisions of the Information Act are not absolute, and the legislature noted in its statement of intent that the Information Act "shall be the exclusive State statute on freedom of information, except to the extent that other State statutes might create additional restrictions on disclosure of information." 5 ILCS 140/1 (West 2004). In enacting the safekeeping provisions of sections 17--20 and 17--22 of the Election Code, the legislature determined that the

need to preserve the integrity of certain election records outweighed the public's interest to inspect them.

Moreover, plaintiff's argument overlooks the remedies provided in the Election Code to challenge the results of an election. As plaintiff acknowledged during oral argument, the discovery recount and election contest provisions of the Election Code provide citizens and candidates for elected office the opportunity to challenge election results. See 10 ILCS 5/22--9.1, 23--1.1a et seq. (West 2004). Through the election contest provisions of the Election Code, citizens may allege the existence of mistake, fraud, or other irregularity in the casting, counting, return, or canvass of the votes in an election. See 10 ILCS 5/23--1.3a, 23--20 (West 2004). Through such proceedings, citizens may seek the entry of an order requiring the election authority to release the sealed election records it is charged with safely keeping. See 10 ILCS 5/23--23 (West 2004). Therefore, although plaintiff was foreclosed by sections 17--20 and 17--22 of the Election Code from viewing the requested election records pursuant to a request for information under the Information Act, he nonetheless had an opportunity to challenge the propriety of the election through one of the proceedings provided under the Election Code. Additionally, plaintiff could have sought inspection of the ballots by filing a mandamus action in the trial court or requested the State's Attorney to investigate election irregularities. See Lueders, 269 Ill. at 211-12.

Finally, we find unpersuasive plaintiff's argument that the Commission's denial of his request failed to contain a sufficiently specific explanation of the statutory basis supporting the claimed exemption. Section 9(b) of the Information Act provides that, when a request for public records is denied on the basis that the records are exempt under section 7 of the Information Act, "the notice of denial shall specify the exemption claimed to authorize the denial." 5 ILCS 140/9(b) (West 2004). Here, as detailed above, the Commission's June 1, 2005, letter denying plaintiff's request specifically

cited section 7(1)(a) as the exemption relied upon and sections 17--20 and 17--22 of the Election Code as the State laws that prohibited disclosure of the requested records. The letter also provided an explanation why sections 17--20 and 17--22 prohibited disclosure of the requested records. We agree with the trial court that the Commission's letter sufficiently explained the basis for its denial of plaintiff's request, and we conclude that the Commission did not violate section 9(b) of the Information Act.

For the foregoing reasons, we affirm the trial court's order granting the Commission's motion for summary judgment and denying plaintiff's motion for summary judgment.

Affirmed.

McLAREN and KAPALA, JJ., concur.