# Illinois Official Reports

## Appellate Court

---

*In re Appointment of Special Prosecutor*, 2017 IL App (1st) 161376

---

| | |
|---|---|
| Appellate Court Caption | *In re* APPOINTMENT OF SPECIAL PROSECUTOR (The City of Chicago, Movant-Appellant, v. The Office of the Special Prosecutor and Dan K. Webb, Respondents-Appellees).–BETTER GOVERNMENT ASSOCIATION, Plaintiff-Appellant and Appellee, v. THE CITY OF CHICAGO LAW DEPARTMENT, THE CITY OF CHICAGO MAYOR'S OFFICE, THE CHICAGO POLICE DEPARTMENT, and THE OFFICE OF THE SPECIAL PROSECUTOR, Defendants-Appellants and Appellees. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-16-1376, 1-16-1892, 1-16-2071 cons. |
| Filed | October 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 2011-Misc-46, 15-CH-4183; the Hon. Michael P. Toomin and the Hon. Mary Lane Mikva, Judges, presiding. |
| Judgment | No. 1-16-1376, Affirmed.<br>No. 1-16-1892, Affirmed in part, reversed in part, and remanded.<br>No. 1-16-2071, Reversed; motion granted. |
| Counsel on Appeal | Loevy & Loevy, of Chicago (Matthew Topic and Joshua H. Burday, of counsel), for appellant Better Government Association. |

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myrian Zreczny Kasper, and Irina Y. Dmitrieva, Assistant Corporation Counsel, of counsel), for other appellants.

Winston & Strawn , LLP, of Chicago (Daniel D. Rubinstein, Sean G. Wieber, and Patrick R. O'Meara, of counsel), for appellee.

Panel                    JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1       The consolidated cases in this appeal present questions regarding the competing interests of public disclosure and confidentiality in records generated because of a grand jury investigation. Historically, the cases had their genesis in 2004, when Richard J. Vanecko assaulted David Koschman in the Rush Street neighborhood of Chicago. Although the chronology of the two cases overlaps, we will set out the facts of each case separately.

¶ 2                              BACKGROUND

¶ 3                 *In re Appointment of a Special Prosecutor* (No. 1-16-1376)

¶ 4       Although Koschman died from his injuries, the incident did not result in the filing of charges against Vanecko or anyone else. Dissatisfied with this outcome, members of the Koschman family filed a petition for appointment of a special prosecutor in the criminal division of the circuit court of Cook County (Case No. 2011 Misc. 46). The petition alleged that a special prosecutor should be appointed because Vanecko was related to Chicago Mayor Richard M. Daley of Chicago and that "officials in the Police Department and the State's Attorney's Office may have been led by favoritism or other improper motives to obstruct the investigation so that [Vanecko] did not face criminal charges." The petition was assigned to Judge Michael P. Toomin.[1]

¶ 5       On April 6, 2012, Judge Toomin granted the petition and appointed Dan K. Webb as a special State's Attorney, directing him to determine (1) whether criminal charges should be brought against anyone in connection with Koschman's death and (2) whether Chicago police or Cook County State's Attorney employees "acted intentionally to suppress and conceal evidence, furnish false evidence, and generally impede" the Koschman investigation. Webb empaneled a special grand jury that investigated the incident, obtained information from over 140 witnesses, and reviewed over 22,000 documents totalling more than 300,000 pages.

---

[1]Because we must address three different appeals from two different judges who interacted with each other during the pendency of their respective cases, the need for clarity requires that we depart from convention and name the judges in this opinion.

¶ 6        On June 14, 2012, while the grand jury was still empaneled, the Office of the Special Prosecutor (OSP) filed a motion requesting that Judge Toomin issue a protective order. The OSP explained that it requested the protective order "to prevent entities like the City from complying with [Freedom of Information Act] requests for the secret grand jury materials that would inevitably end up in its hands." Noting that the interests of justice required secrecy in the grand jury proceeding, Judge Toomin granted OSP's motion and entered an order placing under seal "all Grand Jury materials, including but not limited to subpoenas, target letters, and other correspondence related to the service of a Grand Jury subpoena, sent by the [OSP] to any individual or entity in connection with this investigation." In addition, the order prohibited anyone who received "Grand Jury materials" from the OSP "from further disseminating that material or information contained therein." The order defined "Grand Jury materials" to include "subpoenas, target letters, and other correspondence related to the service of a Grand Jury subpoena." The protective order itself was sealed from public disclosure.

¶ 7        The special grand jury indicted Vanecko for involuntary manslaughter. After Webb informed the court that he would not prosecute any other individuals in connection with the Koschman death or the subsequent investigation, the special grand jury was discharged. On January 31, 2014, Vanecko entered into a guilty plea and was sentenced.

¶ 8        On February 3, 2014, Judge Toomin granted Webb permission to unseal and release a 162-page report detailing the special grand jury's investigation. This report was made available to the public and is included in the record before us.

¶ 9        At this stage, even though the special grand jury had been discharged, various parties began appearing before Judge Toomin to request that he unseal documents generated in the course of the special grand jury investigation. First, on March 21, 2014, the City of Chicago (City) filed a motion requesting that Judge Toomin unseal the June 12, 2012, protective order, because its scope was relevant to resolving a request that the *Chicago Sun-Times* had made to the City pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2012)). On March 27, 2014, Judge Toomin granted the motion and unsealed the protective order.

¶ 10        Thereafter, a dispute arose between the City and the Illinois Attorney General's Public Access Bureau regarding how the City should respond to the *Chicago Sun-Times'* FOIA request. In particular, the City and Attorney General were uncertain what records were covered by Judge Toomin's protective order. To resolve this uncertainty, the City appeared before Judge Toomin and filed a motion to clarify the June 12, 2012, protective order.

¶ 11        On June 25, 2014, Judge Toomin entered a second protective order prohibiting the City from complying with any FOIA request that identified or characterized documents as having been "disseminated to the [OSP] in furtherance of" the Koschman investigation. In addition, the second protective order stated that the June 12, 2012, protective order (1) remained in effect and (2) "limit[ed] only the identification of any documents or other records as being grand jury materials." The order further stated that if "some or all the documents related to the death of David Koschman and subsequent investigations were sought by FOIA request or subpoena in a matter not connected with the work of the Special Prosecutor, such documents could be produced by the City or the [police department], subject to any other applicable restrictions or prohibitions."

¶ 12        On February 25, 2016, the City again appeared before Judge Toomin and filed a motion to modify the June 12, 2012, and June 25, 2014, protective orders. The motion explained that in a

separate case regarding a FOIA request by the Better Government Association (BGA), Judge Mikva had made a preliminary ruling that the City was required to release certain documents whose disclosure was prohibited by Judge Toomin's protective order. See *infra ¶¶* 14-27.

¶ 13 On April 13, 2016, Judge Toomin denied the City's motion to modify. In a detailed memorandum opinion, Judge Toomin explained that the City documents sought by the BGA were grand jury materials under the scope of his protective order and there was a continuing interest in keeping them secret. In particular, Judge Toomin noted the importance of safeguarding the deliberations of grand jurors and witnesses who provided information to the investigation. He further explained that, even though the need for secrecy in a specific grand jury may diminish after proceeding has resulted in an indictment and conviction, there nonetheless existed a general interest in preserving the legitimacy and functionality of the grand jury as an institution that justified, and necessitated, keeping the protective order in effect.

¶ 14 On May 12, 2016, the City filed a timely notice of appeal from the April 13, 2016, order (appeal No. 1-16-1376).

¶ 15 *Better Government Ass'n v. City of Chicago* (Nos. 1-16-1892 and 1-16-2071)

¶ 16 On January 23, 2015, Bob Herguth of the BGA sent a FOIA request to the City seeking (1) "any and all subpoenas issued to the Chicago Police Department, the Law Department and the Mayor's Office in regards to the Vanecko/Koschman investigation/special prosecution" and (2) "all emails and other communications between special prosecutor Dan Webb's office and [the police department], the Law Department and the Mayor's Office in regards to the same investigation/special prosecution."

¶ 17 The City denied the requests based on Judge Toomin's June 14, 2012, and June 25, 2014, protective orders. The City cited section 7(1)(a) of FOIA, which exempts documents from disclosure if disclosure is prohibited by "State law." 5 ILCS 140/7(1)(a) (West 2014).

¶ 18 From the OSP, the BGA sought (1) documents sufficient to show the name of everyone interviewed by the OSP; (2) statements by and communications with Daley family members, their attorney, and Mara Georges, the City's Corporation Counsel; and (3) itemized invoices and billing records. The OSP denied the BGA's request pursuant to FOIA's "State law" exception, but instead of relying on Judge Toomin's order, it cited section 112-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/112-6 (West 2014)).[2]

¶ 19 On March 12, 2015, the BGA filed a complaint for injunctive and declaratory relief against the City, various City departments, the OSP, and Webb (case No. 15 CH 4183). Count I related to the OSP's denial of the BGA's FOIA request. Counts II, III, and IV related to the City's denial of the BGA's FOIA request.

¶ 20 The BGA's case was assigned to Judge Mikva. Judge Mikva declined to transfer the case to Judge Toomin, so the two cases proceeded separately before their respective judges.

¶ 21 The City moved to dismiss BGA's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), arguing that section 7(1)(a) of FOIA, which provides that a public agency is not required to disclose "[i]nformation

---

[2]In their briefs, the parties incorrectly refer to this statute as part of the "Grand Jury Act" or the "Grand Jury Secrecy Act." No law by that title exists in Illinois.

specifically prohibited from disclosure by federal or State law," exempted the requested materials from disclosure. See 5 ILCS 140.7(1)(a) (West 2014). As it did in its original denial, the City argued that Judge Toomin's protective order was a "State law" for the purpose of section 7(1)(a) of FOIA. The OSP and Webb, for their part, also moved to dismiss the BGA's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure, on the basis that the records were exempt from disclosure under section 112-6 of the Code.

¶ 22 On December 17, 2015, Judge Mikva denied the City's motion to dismiss, finding that for purposes of section 7(1)(a) of FOIA, Judge Toomin's protective order was not a "State law." Judge Mikva specifically disagreed with Judge Toomin's construction of section 112-6 of the Code, holding that it did "not extend to protecting persons who provide information to the Grand Jury, unless such person is a State's Attorney or government personnel as provided in" section 112-6(c)(1) of the Code. Therefore, Judge Mikva reasoned, the City could not rely on FOIA's "State law" exemption to justify withholding the records. However, Judge Mikva did grant the OSP's and Webb's motion to dismiss, finding that records sought from them were exempt from disclosure under FOIA under section 112-6 of the Code. Citing *Board of Education, Community Unit School District No. 200 v. Verisario*, 143 Ill. App. 3d 1000, 1008 (1986), Judge Mikva reasoned that FOIA was not the kind of "specific law that would 'direct' the disclosure of otherwise confidential grand jury materials" and that the secrecy provisions of section 112-6 of the Code extended to records and information possessed by a prosecutor, even if the information was never presented to the grand jury, because they could tend to " 'reveal the direction and purpose of the grand jury investigation.' " (quoting *Verisario*, 143 Ill. App. 3d at 1008).

¶ 23 Judge Mikva recognized that this disposition put the City in the untenable position of having to decide which of two conflicting court orders it should obey. She suggested that the BGA request Judge Toomin to modify his protective order in light of her evaluation of the City's obligations under FOIA. Her order had the effect of terminating the OSP and Webb's party status in the case, but it was not immediately appealable because the BGA's claims against the City remained, and the court did not enter any finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), making the order appealable.

¶ 24 The BGA chose not to seek any relief from Judge Toomin, so the City filed its own motion asking him to modify the protective orders in light of Judge Mikva's ruling. After considering the City's request, Judge Toomin issued his April 13, 2016, opinion declining to modify the protective orders (see *supra* ¶ 11).

¶ 25 The City filed a motion to reconsider the denial of its motion to dismiss. Judge Mikva denied the motion, reiterating her position that the term "State law" in section 7(1)(a) of FOIA did not include court orders.

¶ 26 Thereafter, the City filed an answer and affirmative defenses to the BGA's complaint. The City then moved for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2014)), arguing that Judge Toomin's order was a "State law" preventing it from complying with the BGA's FOIA request. In turn, the BGA filed its own motion for judgment on the pleadings, which adopted the arguments it made in opposition to the City's motion to dismiss.

¶ 27 On July 12, 2016, Judge Mikva (1) granted the BGA's motion for judgment on the pleadings and (2) denied the City's motion for judgment on the pleadings. Judge Mikva ordered the City to release to the BGA "the subpoenas and emails requested in the Freedom of

Information Act requests directed to the City Defendants that are attached the Complaint in this action," subject to other FOIA exemptions. Noting the conflict between her order and Judge Toomin's order, Judge Mikva stayed the City's disclosure obligations pending appeal. She also entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that the July 12, 2016, orders on the motions for judgment on the pleadings and the December 17, 2015, order dismissing the OSP and Webb were final and appealable.

¶ 28 On July 13, 2016, the City filed a notice of appeal from the July 12 order (appeal No. 1-16-1892). On August 1, the BGA filed a notice of appeal from the December 17, 2015, order which had dismissed its claims against the OSP and Webb (appeal No. 1-16-2071).

¶ 29 On August 12, 2016, this court consolidated appeal Nos. 1-16-1376, 1-16-1892, and 1-16-2071.

¶ 30                                                    ANALYSIS

¶ 31 We begin with the City's appeal from Judge Toomin's order denying the City's motion to modify the protective order. A protective order "circumscribing the publication of information is reviewable as an interlocutory injunctive order, pursuant to Rule 307(a)(1)." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 221 (2000) (citing *In re A Minor*, 127 Ill. 2d 247, 263 (1989)). We therefore have jurisdiction over the appeal from the order denying reconsideration of the protective order.

¶ 32 Illinois Supreme Court Rule 201(c)(1) (eff. July 1, 2014) states:

> "The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."

Trial courts enjoy a great deal of latitude in determining whether a protective order is necessary. *Skolnick*, 191 Ill. 2d at 223. We review an order refusing to modify a protective order for abuse of discretion, which means "[w]e will alter the terms of a protective order only if no reasonable person could adopt the view taken by the circuit court." *Id.* at 224.

¶ 33 Judge Toomin explained why he denied the City's motion to modify the protective order. Citing *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958), Judge Toomin specifically found that even though the grand jury had been discharged, and Vanecko had been indicted and sentenced, secrecy was still justified by (1) the institutional legitimacy of the grand jury, (2) the need to "assure freedom of deliberation of future grand juries and the participation of future witnesses," and (3) the need to ensure witnesses that the confidentiality of their testimony would not be " 'lifted tomorrow.' " *Id.* at 682.

¶ 34 The City argues that once Judge Toomin learned of Judge Mikva's order, and Koschman had been prosecuted and sentenced, he should have modified his protective orders so as to accommodate her determination that the records were disclosable under FOIA. In the alternative, the City argues that Judge Mikva erred in finding that the protective orders did not constitute a "State law" preventing release of the documents under FOIA. At bottom, the City asks this court to free it from the burden of having to choose which of two conflicting orders it must obey.

¶ 35 The OSP submits that, by requesting the protective order in the first instance, it specifically "sought to prevent entities like the City from complying with FOIA requests for the secret

grand jury materials that would inevitably end up in its hands." It contends that Judge Toomin did not abuse his discretion in imposing a protective order regarding the grand jury's sensitive investigation and proceedings.

¶ 36 "[T]he veil of secrecy surrounding a grand jury proceeding is a fundamental element of a grand jury investigation." *People v. Fassler*, 153 Ill. 2d 49, 62 (1992). The grand jury is an integral part of the court and not the tool of the prosecutor. *People v. Sears*, 49 Ill. 2d 14, 36 (1971). The court has inherent power to supervise the grand jury so as to prevent the perversion of its process. *Id.* at 35 (citing *In re National Window Glass Workers*, 287 F. 219, 224 (N.D. Ohio 1922)).

¶ 37 The justification for grand jury secrecy is well established:

"[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. [Citation.] In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979).

¶ 38 In recognition of these interests, section 112-6 of the Code expressly mandates secrecy regarding "matters occurring before the Grand Jury." 725 ILCS 5/112-6(c)(1) (West 2014); see also Ill. S. Ct. R. 201(c)(1) (eff. July 1, 2014) (providing that courts may enter protective orders).

¶ 39 In the City's view, Judge Toomin's concern that disclosure might undermine future investigations was unjustified. We cannot agree. Candid, complete, and trustworthy testimony is vital to the grand jury's role. As a matter of common sense, a witness who knows that testimony and material he provides to the grand jury is secret, and *will be kept secret*, will be more frank and truthful than a witness who fears his identity might be disclosed at some later time. As such, we cannot find that Judge Toomin abused his discretion when he found that the need for particularized secrecy still existed with respect to certain aspects of the grand jury's investigation. Accordingly, we affirm Judge Toomin's April 13, 2016, order refusing to modify his earlier protective order.

¶ 40 We next turn to the appeals from Judge Mikva's orders, beginning with the City's appeal of Judge Mikva's order granting the BGA judgment on the pleadings. "Judgment on the pleadings is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21. When ruling on a motion for judgment on the pleadings, "a court may consider only those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record." *Id.* Moreover, the court must take as true all well-pled facts and reasonable inferences which can be drawn from those facts. *Id.* We review an order granting judgment on the pleadings *de novo*. *Id.*

¶ 41    Section 1 of the FOIA states:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 2014).

¶ 42    The breadth of its policy statement notwithstanding, FOIA provides that certain materials are exempt from disclosure. The exception at issue here is contained in section 7(1)(a), which provides: "[T]he following shall be exempt from inspection and copying: (a) Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." 5 ILCS 140/7(1)(a) (West 2014).

¶ 43    The BGA correctly notes that no Illinois case has held that a court order constitutes a "State law" so as to insulate documents from release under FOIA. The City contends that a court order constitutes a "State law." But the City also relies on *GTE Sylvania Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375 (1980), in which the United States Supreme Court considered whether a federal agency could withhold records subject to disclosure under federal FOIA (5 U.S.C § 552 *et seq.* (1976)) that were sealed pursuant to an injunction imposed by a federal district court. The Court noted that the remedial provisions of the federal FOIA are only activated when an agency "improperly" withholds documents. *GTE Sylvania Inc.*, 445 U.S. at 384-87. Since the agency was subject to an injunction, the broad purposes of federal FOIA promoting public disclosure were "inapplicable," with the result that it had no authority to release the documents. The Court explained:

"The conclusion that the information in this case is not being 'improperly' withheld is further supported by the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order. [Citations.] *** Under these circumstances, the [agency] was required to obey the injunctions out of 'respect for judicial process.'

There is nothing in the legislative history to suggest that in adopting the Freedom of Information Act ***, Congress intended to require an agency to commit contempt of court in order to release documents. Indeed, Congress viewed the federal courts as the necessary protectors of the public's right to know. To construe the lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as 'improperly' withholding documents under the Freedom of Information Act would do violence to the common understanding of the term 'improperly' and would extend the Act well beyond the intent of Congress." *Id.* at 386-87.

¶ 44    Because the Illinois FOIA was modeled on the federal Freedom of Information Act, Illinois courts look to case law regarding the federal FOIA when interpreting the Illinois FOIA. See *Hamer v. Lentz*, 132 Ill. 2d 49, 58 (1989).

¶ 45    We recognize that the Illinois FOIA, in its current form, is more generous with respect to public access than the federal Freedom of Information Act. Even so, *GE Sylvania* is no less persuasive. Like the federal law at issue in *GE Sylvania*, the Illinois FOIA only allows a court

to order a public agency to produce documents when the agency has "improperly" withheld them. Compare 5 U.S.C. § 552(a)(4)(B) (2012) (federal court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records *improperly withheld* from the complainant" (emphasis added)), with 5 ILCS 140/11 (West 2016) ("The circuit court shall have the jurisdiction to enjoin the public body from withholding public records and to order the production of any public records *improperly withheld* from the person seeking access." (Emphasis added.)).

¶ 46    The *GTE Sylvania* Court expressed a straightforward rule that "respect for the judicial process" required that an injunction could theoretically allow a public agency to withhold materials otherwise disclosable under FOIA. We see no reason, nor any textual distinction in the Illinois FOIA, why the rule articulated in *GTE Sylvania* should not apply with equal force here. In so holding, we need not address whether a court order is a "State law" under section 7(1)(a) of FOIA. We merely hold, as did the United States Supreme Court in *GTE Sylvania*, that "respect for judicial process" requires that a lawful court order must take precedence over the disclosure requirements of FOIA and that a public body refusing to disclose documents because a court order commands it to do so does not always withhold those documents "improperly."

¶ 47    The BGA's arguments to the contrary are not persuasive. The BGA cites two cases in which Illinois appellate courts have ordered disclosure of documents pursuant to FOIA even though disclosure was prohibited by a court order. Both are inapposite. In *Carbondale Convention Center, Inc. v. City of Carbondale*, 245 Ill. App. 3d 474, 477 (1993), a governmental body sought to keep a settlement agreement confidential, arguing that the court that dismissed the underlying action entered an order prohibiting disclosure of the agreement, "and that such an order constitutes State law." *Id.* The court explained that even "[a]ssuming *** and without so holding that such an order is a 'State law,' " that the agency's position was incompatible with the intent of FOIA. *Id.* The court pointed out that because the agency itself *requested* the court to impose the gag order, the "State law" prohibiting disclosure existed, in part, through the actions of the agency itself. *Id.* The *Carbondale* court concluded that such an action contradicted "the purpose and intent of [FOIA] under which the exemptions are intended as shields rather than swords," the agency could not rely on the "State law" exemption in section 7(1)(a) of FOIA. *Id.*

¶ 48    And in *Watkins v. McCarthy*, 2012 IL App (1st) 100632, the court held that a federal court's protective order regarding materials exchanged in discovery in a civil rights lawsuit against the City did not prevent the City from releasing the materials under a proper FOIA request. The *Watkins* court did so for two reasons. First, the protective order in the federal case did not—unlike Judge Toomin's order—specifically prohibit dissemination of discovery materials to a non-party who made a FOIA request. *Id.* ¶ 43. Second, by the time the *Watkins* case was resolved, the federal case had been settled and dismissed, so the protective order was no longer in force. *Id.* As in *Carbondale*, the court assumed that the court order in question was a "State law" within the meaning of FOIA's section 7(1)(a) exception. *Id.*

¶ 49    *Carbondale* and *Watkins* thus stand for the general proposition that an agency cannot—through its own participation, action, collusion, or acquiescence—help obtain a court order and then claim that the order prevents it from releasing otherwise disclosable records. The City did not obtain the protective order at issue here, so these cases do not inform our analysis.

¶ 50    *Kibort v. Westrom*, 371 Ill. App. 3d 247 (2007), is instructive. There, a board of election commissioners received a FOIA request for ballot materials which were, as required by law, kept under seal following an election. The court held that the board properly denied the FOIA request. Even though the Election Code lacked specific language prohibiting public access to the records, it did establish a comprehensive regulatory scheme through which ballot materials were to be secured and sealed and further detailed the narrow circumstances under which a candidate or member of the public could examine these sealed materials following an election. *Id.* at 256-57. Addressing the apparent conflict between FOIA and the Election Code, the *Kibort* court held that "records are exempt from disclosure under [FOIA] in instances where the plain language contained in a state or federal statute reveals that public access to the records was not intended." *Id.* at 256. See also *Better Government Ass'n v. Zaruba*, 2014 IL App (2d) 140071, ¶ 29.

¶ 51    Unlike the courts that issued the protective orders at issue in *Carbondale* and *Watkins*, Judge Toomin issued the protective order at the request of the OSP without the involvement of the public agency holding the records—the City. The City was not a party to the grand jury proceedings, but the protective order nonetheless prohibited it from releasing certain records in its possession. Once it was placed in the dilemma of having to obey conflicting orders, the City itself did appear in the grand jury case and asked Judge Toomin to modify the protective order. He declined to do so and provided cogent reasons for that decision. Judge Toomin was obviously aware of Judge Mikva's FOIA release order because his April 13, 2016, order specifically stated that the City was still prohibited from releasing the documents in response to the BGA's FOIA request.

¶ 52    The BGA echoes the concern of the concurring justice in *Carbondale*, that "all information regarding the affairs of government would be legally exempt from disclosure as long as the government could find a judge to sign an order prohibiting disclosure." *Carbondale*, 245 Ill. App. 3d at 479 (Lewis, J., specially concurring). But the protective order here was issued upon a court's due consideration of the need for confidentiality in particularized circumstances. The order was issued by a judge supervising a grand jury and was not issued at the behest of the City. We do not share the BGA's fear that public entities will abuse the rule of this case because it somehow establishes a precedent under which courts can "legislate" new FOIA exceptions.

¶ 53    In sum, we resolve the question presented by the City's appeal by applying the rule established in *GTE Sylvania*. We need not, and do not, address the issue of whether a court order is "a State law" within the meaning of section 7(1)(a) of FOIA. We reverse the order granting the BGA's motion for judgment on the pleadings. Pursuant to our authority under Illinois Supreme Court Rule 366(a) (eff. Feb. 1, 1994), we grant the City's motion for judgment on the pleadings. See *Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.*, 287 Ill. App. 3d 741, 748 (1997).

¶ 54    We next address the BGA's appeal from Judge Mikva's order, dismissing its FOIA claim for disclosure of records which it requested from the OSP and Webb. As we noted, Judge Mikva found that every item listed in the BGA's request to the OSP and Webb constituted "matters occurring before the Grand Jury" protected from disclosure by section 112-6 of the Code. Accordingly, she dismissed the BGA's FOIA claim against the OSP and Webb pursuant to section 2-619(a)(9) of the Code of Civil Procedure.

¶ 55     When ruling on a motion to dismiss under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. As a result, a motion to dismiss pursuant to section 2-619 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. We review *de novo* the circuit court's decision on motions to dismiss brought under section 2-619. *Coghlan*, 2013 IL App (1st) 120891, ¶ 24. Finally, we review the judgment, not the reasoning, of the circuit court, and we may affirm on any ground in the record, regardless of whether the court relied on those grounds or whether the court's reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 56     The office of a State's Attorney is an executive body of the State, and is a "[p]ublic body" as defined in section 2(a) of FOIA. See 5 ILCS 140/2(a) (West 2016). "As public bodies, State's Attorney's offices must make their public records available for inspection and copying as required by [FOIA]." *Nelson v. Kendall County*, 2014 IL 116303, ¶ 27. The same analysis applies to records of the OSP. See, *e.g.*, 55 ILCS 5/3-9008(b) (West 2016) (a special State's Attorney "shall possess all the powers and discharge all the duties of a regularly elected State's attorney under the laws of the State").

¶ 57     Our supreme court has relied on FOIA's strong policy statement in support of rulings requiring release of governmental records to public review. See, *e.g.*, *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009). The same court has, however, also emphasized the need for secrecy in grand jury proceedings. See, *e.g.*, *People ex rel. Sears v. Romiti*, 50 Ill. 2d 51, 58 (1971).

¶ 58     The BGA suggests that, in light of its FOIA request, the secrecy provisions in the grand jury law must be construed narrowly. It also contends that because Judge Mikva resolved the BGA's appeal of the OSP's denial on a motion to dismiss, she never had the opportunity to conduct an *in camera* review of the documents to determine whether, in fact, they were records of "matters occurring before the Grand Jury."

¶ 59     The BGA contends that the materials it sought were not "matters occurring before the Grand Jury" under section 112-6 of the Code. It claims that its request was broad enough to encompass some "records that were never presented to the grand jury and do not disclose what was presented to the grand jury." It also claims that section 112-6(3)(c) of the Code, which allows disclosure of grand jury materials "when a law so directs," allows disclosure of grand jury materials, because FOIA is "a law" which "so directs."

¶ 60     In pursuing this argument, BGA relies heavily on *Better Government Ass'n v. Blagojevich*, 386 Ill. App. 3d 808 (2008). There, the court determined that FOIA required the Governor to release copies of grand jury subpoenas his office had received. The court rejected the Governor's reliance on a federal grand jury secrecy law that specifically applied to grand jurors, interpreters, reporters, and similar persons who would normally attend the grand jury room. *Id.* at 811-12. The federal grand jury law did not prohibit *recipients* of grand jury subpoenas, such as the Governor, from disclosing their contents. And unlike here, no protective order was at issue in *Blagojevich*.

¶ 61     More on point is *Verisario*. In that case, the court found that "section 112-6(b) was designed to protect from disclosure only the essence of what takes place in the grand jury room." *Verisario*, 143 Ill. App. 3d at 1007. After examining the body of federal case law which had developed on the issue, the *Verisario* court determined that "[t]he mere fact that a

- 11 -

particular document is reviewed by a grand jury does not convert it into a matter occurring before the grand jury within the meaning of section 112-6(b)," and that the section "was not intended to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." *Id.* Therefore, "if a document is sought for its own sake *** rather than to learn what took place before the grand jury, and if the disclosure will not seriously compromise the secrecy of the grand jury investigation, disclosure is not prohibited." *Id.* at 1006-08 (citing *In re Special March 1981 Grand Jury*, 753 F.2d 575, 578 (7th Cir. 1985)).

¶ 62    *Taliani v. Herrmann*, 2011 IL App (3d) 090138, is also instructive. There, the court considered whether a prisoner could use FOIA to obtain copies of the transcript of the grand jury proceedings which led to his indictment and prosecution. The court noted that section 7(1)(a) of FOIA protects records from disclosure if their release is prohibited by a state law. *Id.* ¶ 12. It then found that section 112-6 of the Code, which prohibited disclosure of grand jury transcripts without a court order, was such a law. *Id.* ¶ 13. Since section 112-6(a) of the Code provides that grand jury proceedings are secret and only open to the "State's Attorney, his reporter and any other person authorized by the court or by law," the court found that the prisoner was only entitled to a copy of the grand jury transcripts pursuant to section 112-6(c)(3) of the Code, which stated: "Disclosure otherwise prohibited by this Section of matters occurring before the Grand Jury may also be made when the court, preliminary to or in connection with a judicial proceeding, directs such in the interests of justice or when a law so directs." 725 ILCS 5/112-6(c)(3) (West 2008). The court found that the mechanisms listed in section 112-6(c)(3) of the Code did not include FOIA requests. Therefore, the prisoner could not obtain the transcripts pursuant to his FOIA request. *Taliani*, 2011 IL App (3d) 090138, ¶¶ 12-13. While the *Taliani* court's analysis is brief, and the BGA argues it does not apply, we are nonetheless persuaded that it, and *Verisario*, state sound and workable rules.

¶ 63    The BGA argues that the conflict between "when a law so directs" in section 112-6 of the Code and "prohibited from disclosure by *** State law" in FOIA must be resolved in favor of FOIA. When grand jury materials are actually released, it is often because release is necessary to protect the rights of an accused or "avoid a possible injustice." *Douglas Oil Co.*, 441 U.S. at 222. We believe that the clause "when a law so directs" in section 112-6(c)(3) addresses situations of particularized necessity, such as disclosure to a court clerk or to confront a witness in a criminal trial with his prior contrary testimony. Despite exhaustive briefing, no party has cited a case where section 112-6 of the Code was held *not* to trigger a section 7(1)(a) exemption. We agree with the OSP that adopting the BGA's expansive interpretation of "when a law so directs" would render the secrecy provisions in section 112-6 of the Code "a dead letter," because FOIA would effectively nullify them.

¶ 64    With these principles in mind, we examine the three specific requests that BGA made to the OSP and Webb. The BGA's first request was for documents showing names of every person interviewed by Webb in connection with his investigation. Judge Mikva correctly determined that these materials were "matters occurring before the grand jury" and thus within the scope of section 112-6. Disclosure of the list would clearly reveal the "identity of witnesses," secrecy of which is clearly critical to the integrity of the grand jury process. See *Verisario*, 143 Ill. App. 3d at 1007.

¶ 65    Second, the BGA requested copies of all statements by and communications with "Daley family members," their attorneys, and Mara Georges, the City's corporation counsel. We find

that disclosure of these materials would reveal the identity of witnesses, as well as their testimony and the "strategy or direction of the investigation." See *id.* Accordingly, Judge Mikva did not err in dismissing the portions of counts II, III, and IV relating to the first two of the BGA's FOIA requests from the OSP.

¶ 66    The third BGA request was for the OSP's itemized invoices and billing records. Judge Toomin appointed Webb pursuant to section 3-9008 of the Counties Code. 55 ILCS 5/3-9008 (West 2016). That section requires that a special State's Attorney's bills are to be paid by the county, up to a certain limit. See 55 ILCS 5/3-9008(b) (West 2016). It also requires that before the county pays the bills, "the county shall be provided with a detailed copy of the invoice describing the fees, and the invoice shall include all activities performed in relation to the case and the amount of time spent on each activity." 55 ILCS 5/3-9008(c) (West 2016).

¶ 67    Attorney fee invoices paid from public funds are generally disclosable under FOIA, subject to redaction for work-product and privilege. See 2012 Ill. Att'y Gen. Pub. Access Op. No. 12-005. Judge Mikva stated that disclosure of the invoice detail would "reveal the strategy and direction of the investigation." While some entries in the billing records might reveal "the strategy or direction of the investigation," surely all do not. We, therefore, reverse the dismissal of the portion of count III of BGA's complaint that sought disclosure of the OSP's attorney fee invoices, and remand for an *in camera* review of those records pursuant to section 11(f) of FOIA (5 ILCS 140/11(f) (West 2016)).

¶ 68    On remand, the circuit court shall determine what, if any, portions of the requested records may be disclosed notwithstanding section 112-6 of the Code's prohibition on disclosure of information regarding "matters occurring before the grand jury." Section 112-6 of the Code was modeled on Rule 6 of the Federal Rule of Criminal Procedure. *Romiti*, 50 Ill. 2d at 58. In its current form, the federal rule prohibits disclosure of "a matter occurring before the grand jury" (Fed. R. Crim. P. 6(e)(2)(B)), but its earlier form followed the Illinois rule verbatim, prohibiting disclosure of "matters occurring before the grand jury" (Fed. R. Crim. P. 6(e)(2)(B) (prior to amendment by USA Patriot Act of 2001, Pub. L. No. 107-56, § 203, 115 Stat. 272, 278-79 (2001))).

¶ 69    The phrase "matters occurring before the grand jury" has been defined not only by *Verisario*, but through a well-established body of federal case law, which should guide the court on remand. The United States Court of Appeals for the District of Columbia Circuit has held that the term " 'matters occurring before the grand jury' " in the federal rule encompasses (1) "the identities of witnesses or jurors," (2) "the substance of testimony," (3) "the strategy or direction of the investigation," and (4) "the deliberations or questions of jurors, and the like." *Securities & Exchange Comm'n v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980). See also *Senate of the Commonwealth of Puerto Rico v. United States Department of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). Likewise, the Fifth Circuit has explained that the rule prohibits disclosure of "anything which 'may tend to reveal what transpired before the grand jury.' " *In re Grand Jury Investigation*, 610 F.2d 202, 216 (5th Cir. 1980) (quoting *United States v. Armco Steel Corp.*, 458 F. Supp. 784, 790 (W.D. Mo. 1978)). The circuit court should also be mindful that "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co.*, 441 U.S. at 222.

¶ 70    Accordingly, in appeal No. 1-16-1892, we affirm in part as to Judge Mikva's order dismissing the BGA's FOIA complaint regarding its first and second requests; reverse in part,

as to its third request; and remand for further proceedings consistent with this opinion.

¶ 71                                   CONCLUSION

¶ 72        For these reasons, we (1) affirm Judge Toomin's order in appeal No. 1-16-1376, (2) affirm in part and reverse in part Judge Mikva's order in appeal No. 1-16-1892 and remand that appeal for further proceedings consistent with this opinion, and (3) reverse Judge Mikva's order in appeal No. 1-16-2071 and grant the City's motion for judgment on the pleadings in that appeal.

¶ 73        No. 1-16-1376, Affirmed.

¶ 74        No. 1-16-1892, Affirmed in part, reversed in part, and remanded.

¶ 75        No. 1-16-2071, Reversed; motion granted.