2023 IL App (2d) 220349
No. 2-22-0349
Opinion filed June 22, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PATRICK D. KENNEALLY, in His Official Capacity as McHenry County State's Attorney, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-CH-74 |
| | ) | |
| THE DEPARTMENT OF CORRECTIONS, | ) | Honorable |
| | ) | Michael J. Chmiel, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Birkett and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Patrick D. Kenneally, in his official capacity as McHenry County State's Attorney (State's Attorney), sued the Department of Corrections (Department) pursuant to the Freedom of Information Act (Act) (5 ILCS 140/1 *et seq.* (West 2020)). The State's Attorney alleged that, in violation of the Act, the Department refused to disclose information on certain individuals who had been released from the Department. The State's Attorney appeals from the entry of a summary judgment in the Department's favor. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On May 26, 2021, the State's Attorney filed a complaint for declaratory and injunctive relief against Rob Jeffreys, in his official capacity as director of the Department. The State's Attorney later amended the complaint to name the Department itself (instead of Jeffreys) as defendant. The amended complaint alleged that, on January 21, 2021, the State's Attorney sent the Department a written request under the Act, seeking information about certain formerly incarcerated individuals. On January 28, 2021, the Department denied the request in a letter indicating that, under section 7(1)(a) of the Act (*id.* § 7(1)(a)), the requested information was exempt from disclosure because state law prohibited disclosure, namely, section 3-5-1(b) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/3-5-1(b) (West 2020)). According to the complaint, section 3-5-1(b) protected only the information of persons "committed" to the Department. *Id.* The complaint alleged that section 3-5-1(b) did not apply, because the State's Attorney sought information about released individuals. The complaint alternatively alleged that, even if section 3-5-1(b) applied, it did not prohibit releasing the requested information to law enforcement agencies. The complaint asked the court to declare the Department in violation of the Act and order it to produce the requested records.

¶ 4    After the Department filed its answer, the parties filed cross-motions for summary judgment. On May 12, 2022, the court granted the State's Attorney's motion and denied the Department's cross-motion. The court ordered the Department to produce the requested material and to pay a $2500 civil penalty. However, the Department moved for reconsideration. The court granted the motion, vacated the May 12, 2022, order, and entered judgment in favor of the Department. The State's Attorney filed a timely notice of appeal.

¶ 5                                    II. ANALYSIS

¶ 6 Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). We review *de novo* the trial court's ruling on a summary judgment motion. *Chicago Sun-Times v. Cook County Health & Hospitals System*, 2022 IL 127519, ¶ 24. When, as in this case, the parties file cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 7 Section 1.2 of the Act (5 ILCS 140/1.2 (West 2020)) provides, "All records in the custody or possession of a public body are presumed to be open to inspection or copying. Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." As pertinent here, the term "public body" means:

> "all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof, and a School Finance Authority created under Article 1E of the School Code." *Id.* § 2(a).

A public body's records are " '[p]ublic records,' " (*id.* § 2(c)) and unless exempt under section 7 of the Act (*id.* § 7), they must be available for inspection or copying (*id.* § 3(a)) or available online (*id.* § 8.5(a)). In addition, upon written request and subject to payment of appropriate fees, the public body shall provide a copy of any nonexempt public record that is not available online. *Id.* §§ 3(b)-(c), 6.

¶ 8 Under section 7(1)(a) of the Act (*id.* § 7(1)(a)), "[i]nformation specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law" is exempt from inspection and copying. The letter denying the State's Attorney's request cited section 3-5-1 of the Code of Corrections (730 ILCS 5/3-5-1 (West 2020)), which requires the Department and the Department of Juvenile Justice to maintain a master record file on each person committed to them. *Id.* § 3-5-1(a). Section 3-5-1(b) provides, in pertinent part, "All [master record] files shall be confidential and access shall be limited to authorized personnel of the respective Department. Personnel of other correctional, welfare or law enforcement agencies may have access to files under rules and regulations of the respective Department." *Id.* § 3-5-1(b).

¶ 9 Whether the materials requested by the State's Attorney were exempt from disclosure depends on how we interpret section 7(1)(a) of the Act and section 3-5-1(b) of the Code of Corrections.[1] This presents a question of law. See *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 55. As our supreme court has recently explained:

> "The cardinal principle and primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. [Citation.] The best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. [Citation.] Only if the statutory language is ambiguous may we look to other sources to ascertain the legislature's intent. [Citation.]" *Cothron v. White Castle System, Inc.*, 2023 IL 128004, ¶ 20.

---

[1]The State's Attorney has abandoned his argument that section 3-5-1(b) does not apply because he sought information only about individuals who had been released from the Department.

Statutory language is ambiguous when it is " 'capable of being understood in two or more different senses by reasonably well-informed people.' " *County of Peoria v. Couture*, 2022 IL App (3d) 210091, ¶ 70 (quoting *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 324 Ill. App. 3d 961, 967 (2001)).

¶ 10    Of section 7(1)(a) of the Act, we have said:

"[E]ven if a statute does not specifically provide that records are exempt from disclosure under [the Act] or otherwise contain an explicit prohibition against public disclosure, records are nevertheless exempt 'where the plain language contained in a State or federal statute reveals that public access to the records was not intended.' [Citation.] On the other hand, section 7(1)(a) does not apply 'where a State or federal statute is ambiguous or silent in regard to the disclosure of public records.' [Citation.]" *Better Government Ass'n v. Zaruba*, 2014 IL App (2d) 140071, ¶ 21.

¶ 11    In its written order granting the Department's motion for reconsideration, the trial court noted that the "use of 'may' [in section 3-5-1(b)] embodies an important element of discretion[.]" The court added that it "cannot find where [section 3-5-1(b)] or any other body of law must 'specifically prohibit' release of the requested items before the above-noted discretion can be utilized to simply deny the same." The State's Attorney argues that the court overlooked the language of section 7(1)(a) of the Act. According to the State's Attorney, "[h]ad the trial court applied the law correctly and followed [section 7(1)(a)'s] requirement that[,] in order to assert the exemption, the information must be specifically prohibited from release, the trial court would have ruled in [the State's Attorney's] favor." This is so, according to the State's Attorney, because "the plain and unambiguous language of [section 3-5-1(b)] states that *** [the] personnel of *** law enforcement agencies [other than the Department], may have access to files." As seen however,

section 3-5-1(b) actually provides that such personnel "may have access to files *under rules and regulations of the \*\*\* Department*." (Emphasis added.) 730 ILS 5/3-5-1(b) (West 2020). The Department's regulations provide that "[p]ersonnel of other \*\*\* law enforcement agencies may have access to an offender's files, *as approved by the Chief Administrative Officer*." (Emphasis added.) 20 Ill. Adm. Code 107.310(d) (2013). The " 'Chief Administrative Officer' " is "the person designated by the Director to exercise the powers and duties of the Department of Corrections in regard to committed persons within a correctional institution or facility." 730 ILCS 5/3-1-2(a) (West 2020); see 20 Ill. Adm. Code 525.110(c) (2011) (" 'Chief Administrative Officer' means the highest ranking official of a correctional facility."). The State's Attorney does not contend that the chief administrative officer(s) approved giving him access to the requested materials; thus, under the plain language of section 3-5-1(b) of the Code of Corrections, the State's Attorney was not entitled to access the materials. Although section 3-5-1(b) does not expressly prohibit disclosure of the materials, it plainly indicates an intent to restrict access. See *Zaruba*, 2014 IL App (2d) 140071, ¶ 21. Hence, for purposes of section 7(1)(a), the materials were "specifically prohibited from disclosure" (5 ILCS 140/7(1)(a) (West 2020)), when those words are given their plain and ordinary meaning.

¶ 12    We note that the Department argues that section 3-5-1(b) gives it "discretion" to disclose the materials the State's Attorney requested. Seizing upon that argument, the State's Attorney argues in his reply brief that "[d]iscretionary does not mean specifically prohibited." Again, however, the State's Attorney overlooks the fact that, under section 3-5-1(b), he may have access to the requested materials only "under rules and regulations of the \*\*\* Department." 730 ILCS 5/3-5-1(b) (West 2020). The State's Attorney's argument would create a conflict between the Act and section 3-5-1(b) because the words "under rules and regulations of the \*\*\* Department" (*id.*)

would serve no purpose if the Act did not recognize an exemption for materials not subject to disclosure under those rules and regulations. "[W]here there is an alleged conflict between two statutes, a court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible." *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 427 (1998). Here, we could avoid the conflict by interpreting section 7(1)(a) of the Act to mean that disclosure of the requested materials was "specifically prohibited" (5 ILCS 140/7(1)(a) (West 2020)) because the chief administrative officer(s) did not approve the disclosure. If this interpretation is "reasonably possible," the State's Attorney cannot prevail.

¶ 13    Unfortunately for the State's Attorney, he also cannot prevail even if this interpretation is *not* reasonably possible. If we cannot resolve the conflict by interpreting "specifically prohibited" in the manner described, we would be forced to resort to the principle that "when two conflicting statutes cover the same subject, the specific governs the general." (Internal quotation marks omitted.) *Kloeppel v. Champaign County Board*, 2022 IL 127997, ¶ 22. "This canon of statutory interpretation is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." (Internal quotation marks omitted.) *Id.* Moreover, this principle applies regardless of the priority of enactment of the two statutes. *Id.* (citing *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 32).

¶ 14    Here, section 7(1)(a) of the Act and section 3-5-1(b) of the Code of Corrections both cover the subject of access to public records. However, section 7(1)(a) is far more general in scope, as it applies to records of any "public body," which means:

"all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof, and a School Finance Authority created under Article 1E of the School Code." 5 ILCS 140/2(a) (West 2020).

In contrast, section 3-5-1(b) of the Code of Corrections applies specifically to one type of public record: the master record file for a person committed to the Department or the Department of Juvenile Justice. See *Howard v. Weitekamp*, 2015 IL App (4th) 150037, ¶ 17. Accordingly, even if we agreed with the State's Attorney's interpretation of section 7(1)(a), we would find that the more specific provision—section 3-5-1(b)—controls here. As explained, because the chief administrative officer(s) did not approve the disclosure to the State's Attorney, he is not entitled to access the requested materials. Thus, the trial court properly granted the Department's motion for summary judgment.

¶ 15                                III. CONCLUSION

¶ 16    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 17    Affirmed.

*Kenneally v. Department of Corrections*, **2023 IL App (2d) 220349**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 21-CH-74; the Hon. Michael J. Chmiel, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Tom Cahill, Assistant State's Attorney, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Leigh J. Jahnig, Assistant Attorney General, of counsel), for appellee. |