2024 IL App (1st) 230036-U

No. 1-23-0036

Order filed September 30, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | |
|---|---|
| SOUND OFF VETERANS UNIT II, LCC, | ) |
| | ) |
| | ) Appeal from the |
| Plaintiff-Appellant, | ) Circuit Court of |
| | ) Cook County. |
| v. | ) |
| | ) No. 21 CH 3730 |
| THE DEPARTMENT OF FINANCIAL AND | ) |
| PROFESSIONAL REGULATION, | ) Honorable |
| | ) Celia Gamrath, |
| Defendant-Appellee. | ) Judge Presiding. |
| | ) |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court denying plaintiff's complaint for administrative review where plaintiff submitted its corrected supplemental materials after the deadline provided in the administrative regulations.

¶ 2    Pursuant to the Cannabis Regulation and Tax Act (Act) (410 ILCS 705/1-1 *et seq.* (West 2020)), plaintiff, Sound Off Veterans Unit II, LLC (Sound Off) applied for a cannabis dispensary license issued by defendant, the Illinois Department of Financial and Professional Regulation

(Department). Sound Off failed to earn the minimum number of points on its application to participate in a lottery to receive a cannabis dispensary license. The Department subsequently informed Sound Off of the Supplemental Deficiency Notice Process where Sound Off could submit supplemental application exhibits, giving it an opportunity to earn more points on its application and potentially take part in a license lottery. The Supplemental Deficiency Notice stated that all supplemental materials, "must be received by June 24, 2021 at 11:59 PM Central Standard Time ('CST')." Sound Off initially submitted its supplemental materials before the deadline, but, after discovering an error with its materials, Sound Off made a second submission with corrected materials after the deadline. The Department refused to consider the second, untimely submission and determined that Sound Off failed to earn the necessary number of points to participate in a license lottery.

¶ 3     Sound Off filed a complaint for administrative review in the circuit court contending that the Department's interpretation of its deadline was erroneous. Sound Off maintained that because daylight saving time was in effect on June 24, the deadline submission day, the Department's deadline of "June 24, 2021 at 11:59 PM Central Standard Time ('CST')" was actually one hour later, June 25, 2021, at "12:59 a.m., local time, Central Daylight Time." Sound Off maintained that its corrected submission, submitted before 12:59 a.m. on June 25, 2021, was therefore timely. The circuit court rejected this argument, finding that by referring to "Central Standard Time," the Department was referring to the local time, regardless of whether daylight saving time was in effect.

¶ 4     Sound Off now appeals, contending that it timely submitted its corrected application materials before 12:59 a.m. on June 25, 2021. Sound Off maintains that by expressing the deadline as "June 24, 2021 at 11:59 PM Central Standard Time ('CST')" while daylight saving time was in

effect, the Department was using an "indirect and arcane" manner of referring to "June 25, 2021, at 12:59 a.m. Central Daylight Time." Sound Off asserts that accepting the Department and the circuit court's construction of the deadline would require the acceptance of surplusage because the Department would not need to refer to "standard time" if all references to time were "standard time." For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 5                                   I. BACKGROUND

¶ 6    The material facts are undisputed. Pursuant to the Act, Sound Off applied for a Conditional Adult Use Dispensing Organization License (License) issued by the Department. The Department scored Sound Off's application pursuant to a rubric outlined in the Act, awarding it 186 out of a possible 252 points. 410 ILCS 705/15-30(c), (d) (West 2020). To participate in the Qualified Applicant Lottery and have the opportunity to obtain a License, Sound Off was required to score at least 213 points on its application. *Id.* § 705/1-10, 15-35(a), 15-35.10.

¶ 7    On June 9, 2021, the Department informed Sound Off and other applicants that it would be conducting a "Supplemental Deficiency Notice Process." Under the Supplemental Deficiency Notice Process, applicants that did not receive the maximum number of points available on a particular category could submit an amended application exhibit, or request that the Department review any original application exhibit for potential scoring errors or inconsistencies. The Department informed Sound Off that, among other deficiencies, it failed to submit materials sufficient to satisfy Exhibit P. Exhibit P required applicants to submit evidence of their Social Equity status for which the applicant could be awarded 50 points.

¶ 8    The Supplemental Deficiency Notice provided that all supplemental materials "must be received by June 24, 2021 at 11:59 PM Central Standard Time ('CST')." If the Department did not receive a response to the notice by the deadline, the initial score would become final.

¶ 9    Sound Off submitted its supplemental materials for Exhibit P to the Department at 11:04 p.m. on June 24, 2021. After submitting its materials, Sound Off discovered that it had made an error with respect to its submission for Exhibit P and therefore submitted corrected materials at 12:27 a.m. on June 25, 2021. The Department determined that Sound Off's submission for Exhibit P was untimely and awarded it no points for Exhibit P. After the Department conducted the Supplemental Deficiency Notice Process, it awarded Sound Off a final application score of 195 points, which precluded it from participating in the Qualified Applicant Lottery. The Department issued its final administrative decision on the Qualified Applicant Lottery on September 3, 2021.

¶ 10    Another License applicant, High Haven Dispensary, LLC, filed a complaint in the circuit court for administrative review of the Department's final administrative decision. Sound Off and other applicants moved to intervene in that action, which the circuit court allowed. In October 2021, Sound Off and other plaintiff-intervenors filed their own complaints for administrative review of the Department's decision.

¶ 11    Before the circuit court, Sound Off contended that the Department erred in failing to award it 50 points for Exhibit P. Sound Off argued that the Supplemental Deficiency Notice referred to the deadline as "June 24, 2021 at 11:59 PM Central Standard Time ('CST')"; however, that deadline fell during the " 'spring forward' " phase of daylight saving time, which meant that "Central Daylight Time and Central Standard were asynchronous on the day of the deadline." Sound Off alleged that by stating the deadline as, "June 24, 2021 at 11:59 PM Central Standard Time," the Department was actually referring to June 25, 2021, "12:59 a.m., local time, Central Daylight Time." Sound Off maintained that its corrected submission for Exhibit P, submitted at 12:27 a.m., was therefore timely, and the Department erred in refusing to consider the corrected exhibit.

¶ 12    The Department responded that pursuant to Illinois and federal statutes, the "local time" is always "Standard Time" regardless of whether daylight saving time is in effect. In support of this argument, the Department cited to the Time Standardization Act (5 ILCS 440/1-4 (West 2020)) and the Uniform Time Act (15 U.S.C.A. §§ 260-267), which provide definitions for "standard time." The Department maintained that these statutes demonstrated that "standard time" always refers to the "prevailing local time."

¶ 13    Following oral argument, the circuit court entered a written final order. The court determined that the only question was whether Sound Off timely submitted Exhibit P in accordance with the deadline in the Supplemental Deficiency Notice. The court rejected Sound Off's contention that the plain and ordinary meaning of "June 24, 2021 at 11:59 PM Central Standard Time ('CST')" was actually the next day, June 25, at 12:59 a.m., because of daylight saving time. The court found that even if it agreed with Sound Off's interpretation, the "absurdity doctrine" would apply. The court stated that Sound Off's proposed interpretation would "produce an absurd and nonsensical result." The court determined that Sound Off's interpretation was also contrary to the Time Standardization Act and the Federal Uniform Time Act. The court found that, in accordance with those acts, "[s]tandard time is the local time in effect at any given point during the year regardless of whether daylight saving time is in effect." The court rejected Sound Off's contention that the Department's use of "Central Standard Time ('CST')" was surplusage because the Uniform Time Act specifically refers to "central standard time." The court determined that the Department used that language to distinguish the deadline from other time zones. The court therefore denied Sound Off's complaint for administrative review and affirmed the Department's final administrative decision. The court further entered a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that its judgment was final and appealable.

¶ 14    Sound Off filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal pursuant to Rule 304(a).

¶ 15                              II. ANALYSIS

¶ 16    On appeal, Sound Off contends that it timely submitted its corrected materials before the deadline. Sound Off maintains that by expressing the deadline as "June 24, 2021 at 11:59 PM Central Standard Time ('CST')" while daylight saving time was in effect, the Department was using an "indirect and arcane" manner of referring to "June 25, 2021, at 12:59 a.m. Central Daylight Time." Sound Off asserts that accepting the Department and the circuit court's construction of the deadline would require this court to accept surplusage because the Department would not need to refer to "standard time" if all references to time were "standard time."

¶ 17                          A. Standard of Review

¶ 18    The Department is an administrative agency and therefore judicial review of its decisions is governed by the Administrative Review Law. *Arellano v. Department of Human Services*, 402 Ill. App. 3d 665, 669 (2010) (citing 735 ILCS 5/3-101 *et seq.* (West 2008)). This case turns on the interpretation of the deadline in the Supplemental Deficiency Notice. The Supplemental Deficiency Notice is akin to an administrative regulation. This court construes administrative regulations under the same standards that govern the construction of statutes. *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 391 (1990); see *Better Government Association v. Zaruba*, 2014 IL App (2d) 140071, ¶ 20. "Thus, our primary aim is to give effect to the drafters' intent, and the best indicator of that intent is the regulation's language given its plain and ordinary meaning." *Arellano*, 402 Ill. App. 3d at 673. The interpretation of administrative regulations is a question of law, and our review is *de novo*. *Walk v. Department of Children & Family Services*, 399 Ill. App. 3d 1174, 1181 (2010).

¶ 19                          B. Standard Time is Local Time

¶ 20    Sound Off maintains that the "plain and ordinary meaning" of "June 24, 2021 at 11:59 PM Central Standard Time ('CST')" is "June 25, 2021, at 12:59 a.m. Central Daylight Time" because of the effect of daylight saving time, which advances standard time forward one hour when in effect. We find that Sound Off's proposed interpretation of the Department's deadline would create an absurd result and is contrary to relevant statutory authority.

¶ 21    First, when the proffered reading of a statute or regulation leads to absurd results, or results that the drafter could not have intended, courts are not bound to that construction and the reading leading to that absurdity should be rejected. *Dawkins v. Fitness International, LCC*, 2022 IL 127561, ¶ 27. Sound Off may quibble about the hour based on the observance of daylight saving time, but there is no question that the deadline was stated in the Supplemental Deficiency Notice as June 24, 2021. Sound Off's proposed interpretation would not only change the time of the stated deadline, but would change the deadline to an entirely different day.

¶ 22    Sound Off asserts that this result would not be absurd because there is no practical difference between June 24 at 11:59 p.m. and June 25 12:59 a.m. Sound Off maintains that, in either case, the deadline is before the start of business on June 25. However, the intention of the deadline is clear. The Department required applicants to submit their supplemental materials on June 24, 2021. The deadline evinces that the Department gave applicants until the very last minute, 11:59 p.m., on June 24 to submit their materials. Any materials submitted after June 24 were therefore untimely. In our view, there is no other reasonable interpretation of the deadline.

¶ 23    The Department's interpretation of its deadline is also supported by the Time Standardization Act (5 ILCS 440/1-4 (West 2020)) and Uniform Time Act of 1966 (15 U.S.C.A. §§ 260-64). As relevant here, the Time Standardization Act provides:

"At two o'clock ante meridian of the second Sunday in March of each year, the *standard time* in this state shall be advanced one hour, and at two o'clock ante meridian of the first Sunday in November of each year the *standard time* in this state shall, by the retarding of one hour, be made to coincide with the mean astronomical time of the ninety degrees of longitude West from Greenwich, the standard official time of which is described as United States *standard central time*, so that between the second Sunday of March at two o'clock ante meridian in each year and the first Sunday in November at two o'clock ante meridian in each year the standard time in this state shall be one hour in advance of the United States standard central time ***. (Emphases added.)" ILCS 440/1 (West 2020).

Thus, under the Time Standardization Act, the time in Illinois is always referred to as "standard time" or "standard central time." This is the case whether the time is being advanced one hour in March or moved backward one hour in November.

¶ 24      This is consistent with Uniform Time Act which is intended to "promote the adoption and observance of uniform time within the standard time zones prescribed" in the act. 15 U.S.C.A. § 260. Under the Uniform Time Act:

"During the period commencing at 2 o'clock antemeridian on the second Sunday of March of each year and ending at 2 o'clock antemeridian on the first Sunday of November of each year, the *standard time* of each zone established by sections 261 to 264 of this title, as modified by section 265 of this title, shall be advanced one hour and such time as so advanced shall for the purposes of such sections 261 to 264, as so modified, be the *standard time* of such zone during such period." (Emphases added.) *Id.* § 260a(a).

Sections 261 and 263, together with the Standard Time Zone Boundaries regulations drafted by the Office of the Secretary of Transportation, provide that Illinois is part of the "third zone" of the

nine time zones in the United States. *Id.* §§ 261, 263; 49 C.F.R. § 71.5. "[T]he third zone shall be known and designated as central standard time." *Id.* § 263. The regulations further provide, specifically with regard to the "annual advancement of standard time," that when the standard time of each state observing daylight saving time is advanced one hour, the "advanced time shall be the *standard time* of each zone during such period." (Emphasis added.) 49 C.F.R. § 71.2 Therefore, pursuant to both acts, the currently prevailing local time is *always* referred to as "standard time." There is no separate designation to refer to the local time when the time is advanced by the operation of daylight saving time. When referring to time in Illinois, the reference is always to "central standard time," regardless of the time of the year.

¶ 25 Although non-binding, we find the ruling in *Empire Fire & Marine Insurance Co. v. Continental Casualty Co.*, 426 F. Supp. 2d 329 (2006) persuasive. In *Empire Fire*, two insurance companies disagreed over which company had a duty to indemnify and defend the insured. *Id.* at 329. The insured was involved in an automobile accident on May 7, 2004, at 12:28 a.m., while daylight saving time was in effect. *Id.* at 330. The insured, which was located in Maryland, had purchased an insurance policy from Continental Casualty Company (CNA) that provided, in pertinent part, that it was effective from May 7, 2003, to May 7, 2004, and that: " 'This policy becomes effective and expires at 12:01 A.M. standard time at your mailing Address on the dates shown above.' " *Id.* The insured also purchased an insurance policy from Empire Fire and Marine Insurance Co. (Empire) for the period of May 7, 2004, through May 7, 2005. That policy provided that it was effective: " 'From 05/07/2004 to 05/07/2005 12:01 A.M. Standard Time at your mailing address show above.' " *Id.*

¶ 26 Empire sought a declaratory judgment that it had no duty to defend or indemnify the insured under the policy because its policy was not yet in effect. *Id.* Empire contended that because

daylight saving time was in effect at the location of the accident, the accident actually occurred one hour earlier, on May 6, 2004, at 11:28 p.m. "standard time." Empire claimed that CNA's policy had therefore not yet expired. *Id.* Relying on the Uniform Time Act, the district court rejected Empire's argument, finding that "daylight saving time is the 'standard time' when daylight saving time is in effect." *Id.* at 331-32.

¶ 27 Sound Off contends, however, that accepting this interpretation of the Department's deadline would require the court to accept "surplusage." Sound Off maintains that if the local time is always referred to as "standard time," as the Department urges, there would be no reason to include that language and the acronym "CST" in the deadline since such language could be assumed. This argument, however, ignores the language of both the Time Standardization Act and the Uniform Time Act.

¶ 28 As noted, the Uniform Time Act creates nine separate time zones across the United States. The use of "Central Standard Time ('CST')" in the supplemental deficiency notice served to notify applicants, some of which resided outside of Illinois and may have resided in different time zones, which was the relevant time zone for the deadline. If the Department merely referred to "11:59 p.m." or "11:59 p.m. local time," applicants in different time zones may have believed that the deadline was for their time zone. The language "Central Standard Time" precisely tracks the language used in the Uniform Time Act. The Time Standardization Act similarly uses the phrase "standard time," and "standard central time" to refer to the time throughout the year.

¶ 29 As to the Department's use of the acronym "CST," Sound Off asserts that even if the Time Standardization Act and the Uniform Time Act operate to "make[] the phrase 'Central Standard Time' mean 'Central Daylight Time' for parts of the year there is no statute that changes the acronyms." This argument is a red herring. The statutes do not "change" the definition of Central

Standard Time. Aside from the colloquial use of the phrase "Central Daylight Time" and the acronym "CDT," Sound Off has failed to identify any authority that uses those identifiers. And, in fact, any such authority would run contrary to the law discussed above which explicitly provides that "central standard time" is the proper designation regardless of whether daylight saving time is in effect.

¶ 30    We find Sound Off's reliance on *Brookson Distillers, Inc. v. United States Casualty*, 315 Ill. App. 235 (1942) and *Seligson v. Fireman's Fund Indemnity Company*, 267 N.Y. 624 (1935) unpersuasive. Both cases were decided before the enactment of the Time Standardization Act and the Uniform Time Act. Further, only the abstracts of both cases are available. Finally, we decline to follow *Little v. First Federated Life Insurance Company*, 267 Md. 1 (Md. Ct of Appeals 1972) where the court stated in a footnote that: "As an interesting aside, we note that the running of the clock into August 1 had apparently progressed further than the sixty seconds appellee indicates. Since, on August 1, in Maryland daylight saving time was officially in effect, the 12:01 a.m. Standard Time referred to in the certificate was in reality 1:01 a.m." Sound Off acknowledges that this "aside" is *dicta* and the court in *Little* did not address whether daylight saving time had any effect on the issues presented in the case. Similarly, *Little* did not discuss the Uniform Time Act or Maryland's equivalent time statute which, like the Time Standardization Act, specifically provided that the time in Maryland is referred to as "standard time." Md. Ann.Code, Art. 1 § 35 ("The standard time throughout the State shall be that of the seventy-fifth meridian of longitude west from Greenwich, by which all courts, banking institutions and public offices and all legal or official proceedings shall be regulated"), now Md. Code, General Provisions, §1-301 (West 2014) ("The standard time in the State shall be that of the 75th meridian of longitude west from Greenwich."). Thus, *Little* is of no relevance here.

¶ 31 Accordingly, we find that the Department correctly interpreted its deadline to mean June 24, 2021, at 11:59 p.m. central standard time, which is June 24, 2021, 11:59 p.m. local time in Illinois, and not June 25, 2021, at 12:59 a.m. Because Sound Off acknowledges that it submitted its corrected supplemental materials after this deadline, the Department did not err in disregarding those materials. We therefore affirm the circuit court's judgment denying Sound Off's complaint for administrative review.

¶ 32                                        CONCLUSION

¶ 33 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 34 Affirmed.